SAYLOR, J.,
— This action in equity was brought to enforce the provisions of an agreement established in the joint will of the late Rose Gordon and her husband, Alexander Gordon.
The will, dated January 17, 1959, contains the following:
“It is the will and desire of each of us, and our mutual desire that on the death of the said Rose Gordon, we do direct and order that the Executor hereinafter named, may convert into money, which conversion shall be at the sole discretion of said Executor, our estate consisting of real estate, personal property *532 and mixed of which we shall be seized upon her death; and for that purpose we do authorize and empower our said executor to bargain, sell and convey at public or private sale, said property or any part thereof, and to make, execute and acknowledge all deeds, conveyances, bills of sale and other documents necessary in law for that purpose; and when the said estate shall have been converted into money as aforesaid or otherwise, we do hereby order and direct that the same shall be distributed by our Executor in the following manner:
“(a) Three Thousand Dollars ($3,000.00) to Alexander Gordon, husband of the said Rose Gordon; and
“(b) All of the rest, residue and remainder to Robert R. Goodheart, Mollie Yanofsky and Stanley Goodheart, children of the said Rose Gordon, in fee simple, absolutely and forever.”
By similar language, the will provided that upon the death of Alexander Gordon the same procedure would be followed and after payment of $3,000 to his two children the residue would be distributed to Rose Gordon absolutely.
Rose Gordon died on January 3, 1968. Robert R. Goodheart, the executor named in the will, died before the will was probated. Rose Gordon’s other children, Stanley I. Goodheart and Mollie Yanofsky qualified as administrators c.t.a.
Rose Gordon’s surviving husband lives in the only real estate the parties owned and claims that the personal representatives of the deceased wife have no right to any part of the property or the contents of the house as title to the premises was in his and his wife’s name as tenants by the entireties and he is now sole owner. If the joint will is considered a contract, defendant contends that it violates the statute of frauds.
*533 In the complaint in equity, Rose Gordon’s administrators seek an order of the court directing the surviving husband to permit an impartial appraiser to enter the premises, enjoining defendant from selling the property and ordering him to account for rental income received by him. The court is also asked to enter judgment for plaintiffs for one-half of the rents received by defendant and to permit plaintiffs to sell the premises 1439 Gilham Street and the personal property therein and to distribute the proceeds in accordance with the provisions of the contract contained in the joint will.
Defendant filed preliminary objections in the nature of a demurrer and sought dismissal of the complaint on three grounds: (1) that it was a matter for the orphans’ court; and (2) that respondent, being the sole owner of the premises involved in the action, plaintiffs were not entitled to relief with respect thereto; and (3) that plaintiffs were not proper parties in interest and had no legal standing to maintain the action.
On May 1, 1969, the then President Judge Carroll of the Court of Common Pleas assigned the case to the orphans’ court division, “the Administrative Judge of said Division to assign the matter for trial when appropriate and the Hearing Judge so assigned shall exercise such jurisdiction vested in the Court or any of the Divisions thereof as may be necessary to dispose finally of all issues of fact or law which shall arise.”
Administrative Judge Klein assigned the matter to the late Judge Burke. On May 22, 1970, by reason of the death of Judge Burke, President Judge Carroll “assigned Judge Saylor to the Trial Division of the Court to hear and determine all pre-trial, trial and post trial matters and to exercise such jurisdiction *534 vested in this Court or any of the divisions thereof as may be necessary to dispose, finally, of all issues of law or fact which may arise in these proceedings.”
Prior to his death, Judge Burke dismissed defendant’s preliminary objections and directed defendant to file an answer. An answer was filed together with new matter. Paragraphs 1 to 10, inclusive, of the complaint were admitted. In the new matter, defendant stated that the contract upon which plaintiffs sued him could not be the basis of a suit because of the statute of frauds and, because upon the death of Rose Gordon, defendant became the sole and exclusive owner of the premises involved in the action by operation of law.
Judge Burke had held a hearing on complaint and answer on November 10,1969.
After conferences with counsel, Judge Saylor held a hearing on November 19, 1970. Various attempts had been made by the parties through their counsel to settle their differences. No settlement was reached.
It is admitted by defendant that:
1. Rose Gordon and he were married on September 2, 1950, and as man and wife lived together until her death, testate, on January 3, 1968. On January 17, 1959, the husband and wife executed their joint will which was probated on September 13,1968.
2. On October 24, 1958, Rose and Alexander Gordon took title as tenants by the entireties to premises 1439 Gilham Street, Philadelphia, by deed duly recorded.
3. On January 17, 1959, the Gordons executed their joint will containing the provisions above recited and appointed Rose Gordon’s son, Robert R. Goodheart, executor.
4. Robert R. Goodheart died on May 18, 1968, before letters testamentary were issued to him. Stanley *535 I. Goodheart and Mollie Yanofsky, Rose Gordon’s other children, were appointed by the Register of Wills of Philadelphia County to carry out the provisions of said agreement or joint will.
5. On September 14, 1968, counsel for plaintiffs made written demand on defendant to permit an impartial appraiser to enter upon premises 1439 Gilham Street to determine the market value thereof and of all the personal property therein. Plaintiffs also requested defendant to account to them for all moneys received by him as rent from the said premises since January 3, 1968, and not to sell or otherwise dispose of any of the real or personal property of his late wife.
6. Defendant refused to permit an appraiser to enter upon the premises at 1439 Gilham Street and refused to account for any moneys received by him as rental therefrom.
Defendant denies that, after the death of the executor, Robert R. Goodheart, plaintiffs requested defendant to join with them in selling the premises and distribute the proceeds in accordance with the agreement.
At the hearing conducted by Judge Burke, two witnesses were heard on behalf of plaintiffs.
Mollie Yanofsky, Rose Gordon’s daughter, testified that after her mother’s death when she endeavored to have the house sold to her stepfather before offering it for sale at a higher price, he refused to get out of the house and told his stepdaughter to go to court. Mrs. Yanofsky died December 5,1969.
Dr. Stanley I. Goodheart, Rose Gordon’s surviving son, testified that on a number of occasions he spoke to defendant about his purchasing the property. In April 1968, a month before his brother Robert’s death, in his presence and that of defendant and his son, Jack, Robert proposed selling the property to defen *536 dant and that everything was in agreement that the house be sold. However, shortly thereafter defendant’s attitude changed. Robert, the executor, having died, defendant’s attitude was that Rose’s children would not get their “share of the house.”
At the hearing before Judge Saylor, Dr. Stanley I. Goodheart further testified, over defendant’s objection, as to the facts relating to the execution of the agreement or joint will by his mother and stepfather. He stated that when his father, Joseph Goodheart, died in April of 1945, his mother became owner of premises 2511 Spangler Street, Philadelphia. Following their marriage on September 2, 1950, Rose and defendant resided there, remaining until October 24, 1958. Later that property was sold for $6,000, Rose Gordon realizing from the sale approximately $5,460. When she and her second husband, defendant, purchased 1439 Gilham Street she applied the $5,460 to the purchase price thereof, namely $11,000. Previously, Rose’s three children paid the $1,100 deposit on the purchase and also the settlement costs. Defendant paid the balance of the consideration less a $3,000 mortgage which was given by the purchasers to the Frankford Trust Company'. Settlements for both the Spangler Street and the Gilham Street properties were made on the same day.
Dr. Goodheart also testified that he, his sister and his brother were present when his mother and his stepfather executed their joint will. Subject to the objection of defendant, the hearing judge let him testify as to the reason for the parties to make the joint will. The witness stated that his stepfather “wanted to protect his $3,000.00 in the event that he should pass away first. He wanted to make sure that my mother would refund his children his $3,000.00; $1,500.00 to each of the two children. And my mother agreed upon it.” The witness added, “At the *537 same time my mother thought, if he is protecting his $3,000.00 it should also be stipulated that in the event of her death ... if that came first, that the house would be turned into cash, his $3,000.00 returned to him, and the residue of the property belongs to her children. Now this was the basis of the whole agreement.”
Respecting the $3,000 mortgage, this witness testified that Rose’s three children contributed $30 of the $54 due monthly in accordance with the mortgage terms from the settlement in October of 1958 until Rose took ill in June of 1967. Defendant paid the balance of $520 then due on the mortgage principal.
Defendant testified that during his life, the executor of the will never tried to sell the Gilham Street property, that he, Gordon, put up $3,000 for its purchase, that his step-children paid $30 a month on account of the mortgage, that he did not know if he paid more than the $520 on account of the principal as he always gave his wife the money he earned and she “paid the mortgage.”
The testimony above referred to was taken in order to ascertain the facts relating to the purpose and the execution of the joint will. It was not the purpose to attempt to vary or alter the terms thereof or of the contract therein contained.
In Herr Estate, 400 Pa. 90 (1960), the court said at page 93:
“The Court in interpreting a will or a contract can always consider the surrounding circumstances in order to ascertain the intention and the meaning of the parties. Moreover, where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.”
While there is no ambiguity in the will before us, *538 the oral testimony adduced by plaintiffs makes it abundantly clear that both testator and his wife intended to be bound by the terms of their contract and to have their property sold by the personal representative of the spouse first dying and to have the proceeds of the real estate and contents distributed as they specifically provided.
Based upon the admission in the pleadings, the provisions of the joint will and the testimony adduced at the hearings above mentioned, the court finds as a fact that:
1. Rose Gordon and Alexander Gordon for valuable consideration entered into the agreement set forth in their joint will for the sale of their sole piece of real estate and the contents of the house thereon situated for the purpose of protecting their respective children and their own estates in the case of the death of either party.
2. The property at 1439 Gilham Street was purchased with funds in chief part supplied by Rose Gordon by way of cash paid in by her and her children at the time of the purchase and by the payment of the major part of the mortgage given at settlement, and that the balance of the funds necessary for settlement and the balance of the payments on the mortgage were supplied by defendant.
3. Husband and wife resided at 1439 Gilham Street from the time of its purchase on October 24, 1958, until Rose Gordon died on January 3, 1968, since which date defendant has there resided without payment of rent to the estate of Rose Gordon or to her now deceased children or to the survivor of them.
4. Robert R. Goodheart, named as executor of the joint will, attempted to carry out the will’s directions with respect to the sale of 1439 Gilham Street as did his successors as personal representatives of Rose Gordon but without success owing to the refusal *539 of defendant to honor the provisions of the joint will executed by him and Rose Gordon.
While there is general agreement on the facts by counsel for the parties, defendant’s contention is that (1) the will, taken as a contract, cannot be carried out with respect to the Gilham Street house because the will contains no specific reference to the réal estate or any description thereof and thus violates the provisions of the statute of frauds, and (2) the direction to the executor involves an act of discretion, and he having died, plaintiffs as administrators c.t.a. have no such authority.
If the will is considered to be a contract, this question arises: Should the property at 1439 Gilham Street have been so mentioned and a description thereof added? To require this is to apply the statute of frauds where it was not intended to apply. The parties to the will owned only the Gilham Street property when they made their will. They possessed no other real estate when Rose Gordon died. There was and could be no uncertainty in the minds of the persons interested in the will as to what real estate it referred to. Neither testator nor testatrix had any doubts as to what real estate they were referring to when they wrote the will, nor as to what property was affected by the operation of the will when testatrix died. Neither executor nor the parties in interest in the proceeds of the sale of real estate under the will had any doubt as to what property it referred to. Nor would any probate court have any doubt as to what property was involved in the authority given to the executor appointed in the will to sell the real estate upon the death of either party. No parol evidence is necessary here to indicate to what property the contract applied. This is not a case where strangers deal at arm’s length.
In Gredler Estate, 361 Pa. 384 (1949), the Su *540 preme Court held that where husband and wife agreed in the presence of an attorney that the survivor would will property owned by them as tenants by the entireties to charitable institutions connected with a certain church, such mutual promises constitute an enforceable contract. In that case, the late Justice Horace Stern, who wrote the opinion for a unanimous court, said that the surviving widow could not evade her obligation by either a willful or a negligent postponement of the execution of her will until within the 30-day period preceding her death and thereby defeat the charitable gift.
So, here, a court of equity should and can not countenance the evasion by a surviving husband of his obligations under a contract with his wife based upon mutual covenants and valuable consideration by using the pretext that the contract is meaningless because the real estate was not specifically mentioned and described.
Defendant relies upon Cramer v. McKinney, 355 Pa. 202, where it was held that in the case of a contract to make a will which relates to real estate, the statute of frauds applies. However, there the court, at page 205, said:
“A will containing a devise which makes no reference to the contract does not satisfy the statute.”
That is not this case. Here, the contract is imbedded in the will which, of course, is in writing and was duly executed.
Morever, Prager v. McAdam, 399 Pa. 405 (1960), cited by defendant is not apposite, as it related only to a memorandum consisting only of a receipt for a deposit on the purchase of land, which paper the court held was not in conformity with the requirements of the statute of frauds. There was no contract in writing as in the present case.
*541 Concerning defendant’s contention that only the executor named in the will could exercise the discretion to sell or not to sell the property and, hence, that the administrators c.t.a. had no such discretion, the answer is that each party to the will gave to the personal representative following death the power to sell the real estate and specific directions to distribute the proceeds. Had Robert R. Goodheart died before Rose Gordon instead of after her, it simply does not make sense that such personal representative as might be appointed would have no right to exercise the authority given by the will. The whole purpose of the contract established in the will would have failed and its terms, which were binding on both parties to it, would be meaningless.
The “sole discretion” vested in the named executor must be considered as exercised by the person in office as the personal representative of the estate of the party to the contract who had died, whoever such representative might be. It was the time and the terms of the sale that were involved in the exercise of the discretion. Those matters were solely for the executor. They were not, obviously, for the parties named in the contract who were to receive the proceeds of the sale when and on what terms the executor made the sale.
Concerning defendant’s contention that only the executor named in the joint will could exercise the discretion therein given, it is clear that the administrators c.t.a. succeeding the deceased executor in office possess the power he possessed.
Section 518 of the Fiduciaries Act of 1949 provides :
“Surviving or remaining personal representatives shall have all the powers of the original personal representatives, unless otherwise provided by the *542 will.” So, here, Stanley I. Goodheart, the surviving administrator, possesses the power granted to the executor.
In Kemmerer, Admx. v. Johnstone, 318 Pa. 526 (1935), the court referred to section 3(d) of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides that “all and singular the powers, duties and liabilities of executors are . . . extended to administrators with a will annexed.” The court held that the administratrix could convey a good and marketable title to real estate under the provisions of the will and distribute the proceeds as therein directed.
Section 320.516 of the Fiduciaries Act of 1949, which is based on section 3(a) of the 1917 Act, provides that “An administrator with the will annexed shall have all the powers given by the will to the executor, unless otherwise provided by the will.”
In the instant case, there is no provision in the will which limits to the executor named the grant of power therein given. Hence, under the act in effect at the death of Rose Gordon, the administrators of her estate possess the power to sell the real estate and make distribution of the proceeds thereof pursuant to the provisions of the will.
It would be unconscionable for a court of equity to permit defendant, as the surviving party to a joint husband and wife will, to deprive his stepchildren or their estates of the inheritance he and their mother had agreed that they should receive on her death. Plaintiffs are entitled to the relief they request. Hence, a decree granting such relief is entered.
DECREE
And now, February 4, 1971, upon consideration of the complaint in equity filed by plaintiffs in this *543 matter, together with defendant’s answer thereto, defendant’s new matter, and plaintiff’s reply and the oral testimony taken before the Honorable Court, and upon motion of the attorney for plaintiffs, Abraham N. Bassman, Esq., it is ordered, adjudged and decreed, that:
(a) Defendant herein permit an impartial appraiser to enter upon the premises 1439 Gilham Street, Philadelphia, Pa., and appraise said real estate, together with all the personal property contained therein.
(b) Defendant herein is enjoined from selling or otherwise disposing of said premises 1439 Gilham Street, Philadelphia, Pa., other than in strict conformance with the terms of the agreement or joint will, set forth and made part of the aforesaid complaint in equity.
(c) Defendant herein is directed to account for the rental income received by him from all sources from said premises 1439 Gilham Street, Philadelphia, Pa., since January 3, 1968, the date of death of Rose Gordon.
(d) Judgment be entered in favor of plaintiffs and against defendant for one-half of all the rents received by him from the said property.
(e) Plaintiffs sell and convey, and execute and deliver a deed of conveyance in fee simple to the premises 1439 Gilham Street, Philadelphia, Pa., as hereinafter more specifically set forth, together with all the personal property contained therein, for the present current market value, as determined by an impartial appraiser, as follows:
“ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE on the Northeast side of Gilham Street, at the distance of Three Hundred Forty-two *544 feet Southeast from the Southeast side of Loretto Avenue, in the Fifty-third Ward, formerly part of the Thirty-fifth Ward, in the City of Philadelphia, CONTAINING in front or breadth on the said Gil-ham Street, Eighteen feet and extending of that width in length or depth Northeastward between parallel lines at right angles to the said Gilham Street, the Southeast line thereof along the Northwest side of a certain Fourteen' wide driveway which extends Northeastward from Gilham Street and Southwestward from Magee Avenue, crossing the head of a certain other Fourteen feet wide driveway which extends Northwestward into Loretto Avenue, Sixty-seven feet six inches to the middle of the last mentioned Fourteen' wide driveway. Known as 1439 Gilham St.”
(f) Plaintiffs shall distribute the proceeds of such sale strictly in accordance with the provisions of the agreement or joint will executed by decedent, Rose Gordon, and defendant, Alexander Gordon, on January 17, 1959.